Call the first case. Please step up and identify yourselves. Good morning, Your Honor. My name is Lynn Dowd for the Plaintiff's Appellants. Kimberly Jansen on behalf of the Defendant Fareed Kessanti. Melissa Murphy-Patras on behalf of the Defendant Apolli Uber Technologies. How do you plan to... All right. We're pretty liberal, but we do have two cases, so don't decide to take all day. I mean, at least not more than, say, 30, 40 minutes. Proceed. Thank you, Your Honors. Good morning. Again, for the record, my name is Lynn Dowd, and I represent the plaintiffs Shawn Kramer and Nancy Coronel, who is the guardian of Jasmine Vega, who was one of the persons injured on the night in question. May it please the Court. The sole issue before the Court today is whether my clients have pled facts sufficient to establish proximate cause, sufficiently reasonable foreseeability, and sufficient to overcome an allegation of Mr. Sepaniak, who was the driver that hit them, being an intervening cause. To clarify, we are solely up here on the complaint. We are not looking for any relief relative to any discovery dispute. No motion for reconsideration is before the Court, and the facts are limited to those set forth in our complaint, as subject to the Pedrick Standard, of which I know the Court is well aware. Not before the Court is the Uber hearsay story contained in their brief, nor are any of Uber's embellishments of the facts we have pled before the Court. For example, we have not alleged that Casanti was an independent driver. We have alleged that Uber was his principal and that he was an agent, and the defendants are stuck with that. We have not alleged that plaintiffs safely exited the vehicle. To the contrary, as I'll further delineate, Uber and Mr. Casanti put them in peril and in a dangerous situation. And lastly, the Google map delineating time between two points is not before the Court. It's just our allegations. So, having said that, I would like to say, given my limited time, I know the Court has read the briefs and all the case law, our position is very simple. Defendants were hired to take my clients from point A to point B. We know, based on the complaint, they did not do that. They breached that. Somewhere between point A and B, they dropped off – they didn't drop off. They ejected my clients from the car over their objection in what we have identified and alleged was a very unsafe and dangerous area. In our complaint, and I know the Court has this, but I'd just like to highlight to put this all in context, our clients were ejected from the Uber vehicle, for which they paid for a ride, at 44th and Holman. We've alleged this is an area known to be dangerous, a high-crime area. Mr. Kramer and Ms. Vega were not familiar with this area. They were unable to call for help. Several streetlights were out. The sidewalks were in disrepair. This was a high-traffic area. There were limited traffic control devices. Several drinking establishments were in the area, and we've alleged that persons in various states of sobriety, aggression, or other unsafe state of mind were present. This is an area where vehicles were speeding and driving dangerously. This was an area that lacked a police presence and an area that placed them at higher risk of being a crime or accident victim. Counsel, recently, you know, I saw a news story where a private plane made an emergency landing on Lakeshore Drive. In this case, had the driver let this person out, these people out, and this plane made an emergency landing on Ashland and struck them to both, would you have a case against the driver? Possibly not. But that's an important question, Your Honor, that frames actually a later point of my argument, but I'll address it right now. There is respectfully no way that Mr. Sepaniak can be deemed to be an intervening cause and thereby excusing the defendants of the breaches of their duty because an intervening cause, excuse me, and I'll just jump ahead to that point that I'd like to make. An intervening cause only applies when the perilous forces that defendants have set in motion have come to rest in a position of apparent safety. In other words, like in your question, Your Honor, had they delivered my clients to Point B and they moved on and exited the vehicle and the helicopter crashed into them, they may have an argument. But, again, we're up here on a motion to dismiss where they were hired, they ejected them before they completed the... The question was what if they were ejected prematurely as they were alleged to be here and a plane swooped down and a helicopter crashed in the middle of the street, something most people would say is not very expected. Would you have a case? Possibly we would, possibly we wouldn't. And quite frankly, Your Honor, every case, there's a lot of case law on this, and every case turns on its specific facts. And one thing, for proximate cause to be decided as a matter of law, the case law instructs that it must be something freakish, fantastic, bizarre. And so that hypothetical might well fall into this, but here in this area where this driver dropped them off in a dangerous area, I think a jury could reasonably conclude that something perilous would happen to them. And, you know, may I say that quite shamelessly? But something perilous is different than what happened here, right? I mean, if you were dropped off in a high-crime neighborhood, which is what you alleged, right, it's a high-crime neighborhood, 44th and Holman, is that where we're at? Yes, sir. Okay. A high-crime neighborhood and they're mugged, that would seem to be a more straightforward case, right? Because you say you put me in a dangerous neighborhood and something happened to me that is the result of being in a dangerous neighborhood, I was mugged. Here it was a driver, somebody who had nothing to do with Uber. It's true they would not have been on the street had they not been ejected. Nobody's questioning that. But what the trial court said was this, no one can be held to foresee that another driver a few blocks away will be driving negligently, will fail to yield, will speed. I guess you didn't actually allege they were intoxicated, right? There was some reference in one of the briefs to the driver being intoxicated. No, we haven't alleged they drove. Yes. I didn't think you did. Okay. So driving too fast and failing to yield. Is that foreseeable? Is that something that they can be held to have foreseen? Yes, is my answer. And let me back up and explain why. In preparing for argument today, I just want to say that shamelessly I went right to a decision written by this division of the appellate court, Gress v. Licani, which was cited in our reply brief. And in there, the court stated that the exact injury does not need to be reasonably foreseeable, and that's citing the Marshall v. Burger King, Illinois Supreme Court case, where in that scenario, and I think all of the cases present fact patterns, all the cases we've cited present fact patterns that are arguably far less likely and far less foreseeable than what we have here. And I'd like to get into that. But there, even in the Gress case, this court has stated that, again, the exact injury need not be reasonably foreseeable. It is just the general character and the foreseeable, the general character of the event or the harm that might befall persons. So let's back up from there. We've alleged a high crime area. Is it foreseeable they'd be mugged, attacked, raped? I think a jury could so conclude. We've alleged in this area the streetlights were out, the sidewalks were in disrepair. Could they have left the car and broken a leg, stepped in that pothole? A jury could so conclude. We've alleged that there are a lot of people leaving bars and restaurants in possibly a drunken state, aggressive state. Could they have been mugged, attacked, hit, anything like that? A jury could so conclude. We've alleged that there was a high traffic area with a lot of cars speeding in the area. Could they be hit by that? Is it reasonably foreseeable? Yes. But more importantly, in your Gress decision, this court, like a lot of the decision, focused in on the duty owed. And I think duty is important because that frames the proximate cause analysis. So here, it's not before the court. They owed a duty to take my clients safely from point A to B. But in the Gress case, this court talked about, A, common carriers and their hotels, innkeepers, how they owed the highest duty of care to their patrons. Okay? Meaning a duty to protect the patron or the passenger from harm from a third party. And that harm could be negligent, intentional, even criminal. But in another case we cited in our reply brief, Joe versus Sanchez, that decision talks about private for hire carriers, which clearly Uber fits that definition, as does Casanti. And in that decision, it says the same duty of care is owed by private for hire drivers as that owed by common carriers. It's the highest duty of care. So that encompasses two things. They had a duty to protect our passengers from third party harm, and also a duty, even under the duty of ordinary care, to not place them in a dangerous situation. They placed them in peril. Our position is if you place someone in a perilous, dangerous situation, it is reasonably foreseeable that they will experience peril. And here's another error that we've seen. But the particular peril should be one that is foreseen as a consequence of the breach of duty. And that's really what we're getting down. And I think here a jury, given this area, and again, as we've alleged, all the high-speeding traffic and even possibly drunk drivers, could reasonably foresee that you drop people off in a poorly lit area. They don't know the area. They're trying to get to their destination. Can they be hit by a car? Absolutely. And what I'd like to say on this point, Your Honors, because I think this is a fundamental error in the circuit court's analysis, I don't know when the experience of being hit by a car is excluded as an injury. That's one of our injuries here. Mr. Sepaniak was the driver, but this is the situation that defendants put in motion. They put them out there and exposed them to the risk of being hit by a car. Once they were hit, they had other physical and medical injuries, absolutely. But again, our burden is to show that defendants were a proximate cause. And this is a question of fact. This is not something freakish or bizarre or fantastic. I think this was not just reasonably foreseeable, but on this fact pattern, and again, in light of the facts, we've alleged that Uber knew Mr. Casanti did exactly the same behavior previously. He had a history of ejecting passengers, arguing with them. He had mental illness. He had PTSD. He had all these problems. They fired him before, and then they rehired him. They could have just eliminated the app, but they didn't do that. So the case law says that they are responsible for the condition they created, and we also have cited a case in our brief that says you cannot hire an incompetent driver. The principal is responsible. You just said condition versus cause, and I'm only seeing that this is a condition, which means there's an intervening act that interferes with the condition. Not that, no, Your Honor. Respectfully, that's not the condition to which I'm referring. The case law that we've cited states that if you place someone in a perilous situation, in a perilous condition, not cause versus condition, you are responsible for the harm that befalls them. But are you responsible for any harm? Well, no, not any harm. But let's look at some of the case law that gives us guidance, because, again, I think that the existing case law, again, the court reversed on 615 motions to dismiss. Maybe they'll prevail a trial. They can make this argument. But in the Anisic case we've cited, the court rejected an argument that a murder was not reasonably foreseeable. When a supervisor of an employee was abusive, made her go with off-premises, she rejected his advances, he killed her. The court held that a murder was reasonably foreseeable. Well, they didn't hold it. They said a jury could so find that that's not freakish or fantastic given his history. Malorny, 1986, a trucking company was liable for a trucker's rape of a hitchhiker off-premises because, again, they had a duty to guard against perils and hazards likely to be encountered in the performance of a duty. If you reject someone in a neighborhood in Chicago in which they're unfamiliar and there's high-speed traffic, it is likely that they can get hit by a car. Indelkoffer, 1996, here's one dealing with cars. And I think this is, you know, arguably more freakish and fantastic. A church who had a timed treasure hunt sent people off in their vehicles. They took off. They're off on their treasure hunt. One of the defendants doesn't see a stop sign. It's obscured by bushes. Who could predict that? And they are in a collision. The appellate court stated there, because the church set in motion a situation that could reasonably cause drivers to speed, that that is reasonably foreseeable, and that the other driver hitting them was not an intervening cause. The case law also says if the intervening cause, the arguable intervening cause, is reasonably foreseeable, they're responsible for that. And I think we minimally have that here. Przybylski, 1972, says right out, or it doesn't say it, but it reflects, the act of leaving a car does not break the chain of causation. In that case, we had the plaintiff jumping out of a car when the driver took her down a dark area, a dead-end road, and scared her. She ran away. She left the vehicle some distance from that taxi. She tripped over railroad ties. Arguably, you know, from the point of taking someone from point A to B, who could predict that? But again, the law, and again, as exemplified by this court's own decision in Grest, we don't have to predict with exact precision or certainty what harm might befall a person. This is a jury question. Does that mean that the rideshare company and the driver are absolute insurers of the safety of any passengers they drop off? Prematurely, prematurely drop off. Incorrectly drop off. No. So what's the limiting principle? The jury trial. If we're just talking about – It's foreseeability, right? I'm sorry? It's foreseeability, isn't that – Reasonable foreseeability, yes. In light of their status – All bets are off. Once they drop her off, drop them off, whatever happens. No. No, I'm not, Your Honor. I'm just pointing out cases where, in response to your inquiry, at what point – I don't know the end point, quite frankly. This takes us all back to those law school cases. But this is why we have juries. And it should be an exceptional case where the court finds, as a matter of law, that we haven't pled proximate cause, that it's not reasonably foreseeable. Again, on this fact pattern, maybe the defendants will prevail. They can make this argument. But to say on our complaint, we have an alleged fax sufficient to establish that, in light of their known duty to take us from point A to B and they breached it, and here's where they dropped these two young people who sustained an injury, to say that that could not have been foreseen or anticipated as a matter of law, I think that's an error. So the plaintiffs were crossing a crosswalk? Yes. When the car hit? Yes, at night. Yes. There's not a lot of detail about the actual collision itself in the complaint. It doesn't say, for example, the car ran a red light. We don't have anything like that, right? At this time, we don't know that, yes. Because, again, we're pretty early in the case, yes. That's fine. They were walking through a crosswalk. Is there anything about the fact that they were in a high-crime neighborhood that led them to be hit by that car? That led them to be in that crosswalk? Well, is there anything about being in a high-crime area? I think we've alleged the nature of the area to illustrate the danger to which they've exposed them. And so one of the points I'm making today… Sure, but that's kind of what we keep trying to pin down counsel. I mean, it's a tough case. And this is like being in law school a little bit. It does remind me of a torts class in law school a little bit. General danger, yeah, absolutely. You get dropped off at 2 in the morning at 44th and Holman, yeah. If I were thinking about that, what kind of things would I be thinking of? Yeah, I'd be thinking, boy, watch yourself. That's dangerous. You could get mugged. You could get attacked. Maybe it's really cold. This, I think, was in October. I have no idea what the weather was. Maybe it's the middle of a snowstorm, and you're not dressed properly, so you get frostbite, or you slip on an icy sidewalk. But those are facts, and those aren't the things that happened. So it was a dangerous situation to be put into. It's 2 in the morning, and it's, you say, a high-crime neighborhood. Take your word for it, because you pleaded it in the complaint. But what does that have to do with them being in a crosswalk? The sidewalks you said were torn up, what does that have to do with them being in where they were when they got hit? Your Honor, perhaps that particular fact is not relevant to what happened to them. Perhaps. I mean, we pled a complaint, and, again, a complaint is pled in anticipation of the whole case. But, again, to simplify the analysis, I really don't respectfully think this is a difficult case, because the definition of an intervening cause is that the perilous forces, the dangers, and, again, we've alleged this was a high-traffic area with a lot of speeding traffic. That alone creates a perilous, dangerous situation, and I think a jury could conclude that if there's a lot of traffic, they're at a high speed, it's dark, traffic control signals are not working in that area, that it's reasonably foreseeable that they could get hit by a car. If, in fact, this driver was intoxicated, we've alleged it's in an area with a lot of bars, they were coming, the bars were emptying out at 2 in the morning, I think it's reasonably foreseeable that something untoward might happen with a person who's had a little bit too much to drink. But, again, the law states that it doesn't say that the exact injury or occurrence has to happen. It says, and I'm quoting, perilous forces that the defendant set in motion must come to rest in a position of apparent safety in order for that intervening cause, assertion, or actor to be a legal defense. I submit we don't have that here. And, again, we're up on a motion to dismiss. I think these are all matters that should be better decided for a jury, because that's why we have the juries. They're going to decide that end point when it's too much. As a final matter, Your Honors, I'd just like to say a word about the allegation of forfeiture in this case. You know, I feel a little bit like the practice of law is like raising children. The longer I do it, the less I know, because everyone seems to see forfeiture everywhere. And we've been accused of forfeiture, so I'd like to set the record straight. On page 3 of the Court's opinion, A5 in our appendix, this and the defendants know this, so I find this a stunning allegation. The Court did not permit briefs, so this is not something that we waived. And the Court even reflected this in her opinion, where she stated, quote, the Court has read the motions, responses, and replies, having been deemed unnecessary, as well as all of the supporting materials tendered herewith. The Court noted that in her record. Briefs were not permitted, so there's been no forfeiture. Respectfully, Your Honors, unless you have any other questions, we'd like to ask that you reverse the dismissal and remand this for further proceedings. Thank you very much. Good morning, may it please the Court. Kim Jansen, again, on behalf of. Kim Jansen. Jansen, J-A-N-S-E-N. On behalf of Mr. Cassanti. And I will start where Ms. Dowd left off with the issue of forfeiture. The memorandum opinion does say that replies and responses were deemed unnecessary. It does not say that they were deemed unnecessary by the Court, and it certainly does not say that they were not permitted by the Court. Plaintiffs certainly could have filed a response to the motions to dismiss. They certainly should have if they wished to preserve any of their arguments in opposition to the motion to dismiss. Respectfully, the arguments. The same arguments have been made in previous versions of the complaint, right? They tried to. Similar arguments were made as to some points, but they weren't all the same arguments. For one, I just said on a purely technical basis that previous arguments were made as to the sufficiency of the allegations of the seven different prior versions of the complaint. No arguments were made as to the sufficiency of the new allegations in the amended, seventh amended complaint. And, of course, by filing a seventh amended complaint, they have waived any challenge to the dismissal of the previous versions of the complaint. But beyond that, the arguments aren't identical. The next issue that I wanted to address as well is the question of duty, which at least as to Mr. Casanti is an alternative basis on which this Court can affirm the dismissal. And the arguments raised in their response to the sixth amended complaint are not the same as the arguments being raised now. For one, in their response to the motion to dismiss the sixth amended complaint, plaintiffs never argued that Mr. Casanti was a common carrier, that he owed the heightened duty of care that would be owed by a common carrier. In fact, they've never alleged that in the complaint. They have an allegation with respect to common carrier status as to Uber, but that's not incorporated by reference or otherwise into the counts against Mr. Casanti. So any claim that there's a duty owed by Mr. Casanti on the basis of a common carrier theory is forfeited because they've never raised that in any of the prior briefing. They also, in their response to the motion to dismiss the sixth amended complaint, did not address the arguments that there is no duty based on the principles set out in the Ziemba case. And related to the foreseeability issues in proximate cause, Ziemba applies foreseeability principles in a duty analysis and held that a defendant has no duty to anticipate or guard against the negligence of a third party. And that's exactly what we have here. In fact, almost identical negligence of a third party in both cases. In that case, it was a driver exiting a driveway without paying good attention. In this case, a driver running through an intersection at too high rate of a speed and without yielding to the pedestrians. So if your client had kicked out these passengers early in a high crime neighborhood at 2 in the morning and they were mugged, that would be the actions of a third party. You say no liability. If there's a high crime area and they're aware that there are frequent muggings and they let them off somewhere where it's reasonably foreseeable that for them to get to their intended destination, there's a foreseeable chance that they might be mugged, then I think there might be. But that's the actions of an independent third party and it would be foreseeable, you're saying. Well, and that's foreseeable so that the heightened duty to guard against third party negligence arises in those special relationship cases. So if Mr. Casanti had been a common carrier, that might apply. And it might apply even, well, no, I don't, it might apply in this case under a common carrier theory had that been argued or alleged under the theory that they wouldn't have come to us. But do we need to talk about common carriers? I mean, this person was paid to drive them somewhere. He didn't take them there. He kicked them out early. Maybe he had a right to kick them out. Maybe they were being abusive to him. Who knows? But that's not what the complaint says. The complaint says he was wrongly, he wrongly ejected them. And so if something happens to them as a result, at least something foreseeable, okay, we might argue about what's foreseeable. That's probably one of the big things we have to decide here is what actually happened. Was it foreseeable? But if you were dropped off in a high crime neighborhood and they got mugged or if they were dropped off in the middle of a snowstorm and they got frostbite or they slipped on a sidewalk because the place was covered with ice and the driver could look out and see that, I mean common carrier now wouldn't court law assign negligence and liability to the driver? I don't think so. I believe that the negligence in those cases would depend on the common carrier status. As a common carrier, if he had dropped them off under those circumstances and they were mugged or suffered frostbite or any of those other scenarios, then they would not have, from the time he improperly ejected them from the vehicle, they would not have come to rest in a position of safety. That's not the case here. In this case, they've ejected from the vehicle. They've gotten off at 44th and Holman. They've walked five blocks to 43rd and Kedzie, certainly in a position of safety because they've made it five blocks without incident. When the subsequent intervening act of Mr. Chetaniac, blowing through the intersection at an improper rate of speed, et cetera, becomes the intervening cause of their injuries. And as this panel has alluded to in a number of questions, for liability to be imposed upon Mr. Chetaniac in that case, it had to be foreseeable to him at the time he ejected them from the vehicle, allegedly, not only that Mr. Chetaniac's negligence was foreseeable, but that it was foreseeable as a consequence of Mr. Cassanti's own negligence. That's what the cause versus condition cases uniformly hold, and plaintiffs have studiously avoided addressing those cases. So plaintiff's counsel argued that Mr. Chetaniac can't be an intervening efficient cause and cited a definition for intervening cause as relating to this coming to a place of rest and safety. And I think she's muddled a little bit the common carrier duty with the cause versus condition causality standards. The Illinois Supreme Court has defined an intervening cause as when a subsequent independent act of a third person causes the injury. So if Mr. Cassanti's negligence and Mr. Chetaniac's negligence are two independent acts that have no relation to one another, then Mr. Chetaniac's negligence is the intervening cause. For Mr. Cassanti, then, to be liable for the injury resulting from Mr. Chetaniac's negligence, Mr. Chetaniac's negligence had to be a foreseeable consequence of Mr. Cassanti's conduct. I don't think there's anything alleged and certainly nothing that's been argued that would establish that Mr. Cassanti had any reason to anticipate that happening, and certainly not as a consequence of dropping these plaintiffs off at the wrong location. If this Court has no further questions, I don't want to take up too much of Ms. Murphy-Petras' time. All right. Thank you. And we would simply ask that you affirm. Good morning, Your Honors, and may it please the Court. Again, Melissa Murphy-Petras on behalf of Uber Technologies. Judge Ellis, I think in his last question, got it right. The only issue here is the reasonable foreseeability aspect of legal causation. All of the arguments that we've heard this morning about duty and common carrier, et cetera, are simply not relevant. As we said in our brief, Uber acknowledges that plaintiffs pled duty, breach, and cause, in fact, adequately to survive a 2615 motion, which is why the motion attacked only legal causation, which is the issue of whether or not, as we've been discussing, it was reasonably foreseeable to Cassanti at the time that he discharged plaintiffs from his car that Cheponniak's conduct in five blocks away, speeding, driving drunk, and hitting the plaintiffs was a natural and probable outcome of Cassanti leaving the plaintiffs where he did. And we respectfully submit that plaintiffs have not pled that. They have pled, you know, that it was dark and that the area was dangerous for other reasons like sidewalks. But, you know, the reality is these folks did make it. They exited the car safely. They walked five blocks safely. They were crossing in a pedestrian crosswalk, according to the complaint. And Cheponniak, unfortunately and tragically, quite frankly, was speeding and driving drunk. You are right, Justice Ellis, the drunk driving allegation is not in the complaint, but you can take judicial notice of that. The Illinois Department of Corrections website indicates that Cheponniak was convicted of a felony as a result of this accident. It was a DUI felony. He's incarcerated in the Taylorville Correctional Center at least through April of 2023. All of that goes to- We can take judicial notice of that- Absolutely, yes. On review of a 2615 motion? Yes, yes, I think that you can, absolutely. And all of this, again, goes to whether or not it was foreseeable to Casanti at the time that he let them out of the car, a drunk driving accident could happen five blocks away. Counsel, do you agree that a principal-agent relationship between Casanti and Uber was adequately alleged here? We did not attack that in our 2615 motion. So anything that we would say of the driver, we would say Uber, right? The principal is liable for the agent's torts, and are we on the same page here? Well, for purposes of the 2615 motion, yes. Obviously not for purposes of the litigation should continue further than this, yes. But that's correct. We only challenged legal causation. A few other points that I would like to address. Plaintiff's counsel had mentioned the writer feedback and information that Uber disclosed with respect to Casanti's reviews that he had gotten as an independent driver. That is really irrelevant. It goes to cause and effect. You know, the issue of whether the plaintiffs would have been walking where they were had Casanti taken them all the way to their destination. Again, it does not go to legal cause, which is what was reasonably foreseeable to Casanti at the time that they exited his car. So all of that really does not need to be dealt with. And, again, the same with the duty issue. Counsel, if Uber had dropped off these people prior to their destination, not where they wanted to be dropped off, in the middle of I-94, and they were hit by a car because cars go 55 miles an hour at least on I-94, we'd have a different case. Would you have an argument there that that was not reasonably foreseeable? They would be hit? No, I agree with you. I think that that would be a very different case. Yes. Yes. Pulling off in the middle of a lane in I-94 and saying get out and dodge the cars as you're going, I think that would be a very, very different case with respect to what happened here. Plaintiff's counsel kept referring to the plaintiffs as being locked in a perilous position. But, you know, the reality is they were in the same position as any other person in that neighborhood on a Saturday night or early Sunday morning going home after a night out. The Abrams case that we cite and discuss in our brief I think is very instructive on that point, and that was the case in which a plaintiff called an ambulance when she went into labor, the city did not send it, and then she was later involved in a car accident. And the Supreme Court, you know, was very clear that at the time of the city's failure to send an ambulance did not put the plaintiff in any more peril than faced by any other woman in labor going to the hospital in a private car. And we have the same thing here. These folks walked safely for five blocks, as many people do in Chicago, on a late Saturday night or early Sunday morning following an evening out. They were in simply no other greater peril than anybody else. So he did not put them in a perilous position. John, excuse me, Mr. Chapaniak, is the one who put them in a perilous position when he disobeyed the rules of the road, which, you know, certainly Cassanti does not have to. Counsel, does the complaint allege that the driving, I know we talk about high crime, and it doesn't seem to have a lot to do with them getting hit by a driver. Sidewalks don't really seem to have a lot to do with it if they were, in fact, in a crosswalk. But they also, I don't have committed to memory everything they said about the actual driving. They did say they were by bars and places where people would drive fast. Did they adequately allege that while this was clearly not I-94, it was a place where cars drove fast, a place where a pedestrian might much rather be in a car than having to travel by foot? Well, I think they do allege that, yes, it was a busy commercial area. There were a lot of bars. There was traffic. But I think that description could fit a lot of neighborhoods in Chicago and its surrounding suburbs. I mean, this is a large urban area. A lot of streets are busy. I live three blocks off North Avenue. That's a four-lane highway. I mean, I think that description, just to say, well, he left them in an area. It was dark. It was late. It was busy. That could be anywhere in Chicago. That still does not, you know, the idea that any accident could happen, I think we could probably all agree, is foreseeable to an extent. Casanti had to have foreseen this accident as a natural and probable outcome of leaving the plaintiffs where he did. What do you mean, this accident? He had to have foreseen that this could have happened. That a car might hit them on their way home. And when you look at the facts that they've alleged, and they have alleged that they walked five blocks, they were crossing within a pedestrian crosswalk, John was speeding. I don't – Casanti is allowed to presume, as we all are, that other drivers will follow the rule of the road and so on. And so I think, you know, this accident, under these circumstances, has to be what's analyzed for reasonable foreseeability. And it's just not here. Unless the court has any further questions. Thank you. We request deferments. Thank you, Your Honors. I'll be very brief. A couple of things. We're before the court, and our allegations are subject to the Peddrick standard. So plaintiffs get all the reasonable inferences that can be drawn from the complaint, not the defendants. Counsel's argument about that Mr. Kramer and Ms. Vega left the vehicle and were proceeding safely, we've alleged no facts to support that. To the contrary, the facts we've alleged, and I'd cite the court to Paragraph 31 in partial answer to Your Honor's question, Justice Ellis. This is an area where we've alleged several streetlights were not operating, limited traffic control devices, high volume of traffic, drinking establishments in the area. On these facts alone, it's reasonable, it's reasonably foreseeable that not just our clients probably did not feel safe, but also that the surrounding traffic may not have been able to carefully traverse through this area. Perhaps Mr. Casanti couldn't see my clients. This area put Uber and Mr. Casanti on notice that it would be reasonably foreseeable they could get hit by a car. The cars could not necessarily see passengers at night. Counsel, doesn't your complaint allege that they walked five blocks? It may allege we've walked five blocks, but again, that would be. Well, you say they dropped them off in an area, but the accident occurred more than half a mile away from that area. The entire five-block area, Your Honor, I don't know what the condition of that was, if that was ill-lit, high speed of traffic, and what have you. And I would quite candidly, I don't think we can conclude that from our complaint, and we weren't thinking of those specific things when we pled it. But again, under the Pedrick standard. My point is they were dropped off in one place, and you say a lot about the place where he dropped them off, which he could be charged with knowing where he dropped them off. He can be, the driver can be charged with knowing, oh, the lights are out. This is a lot of bars around here. It's 2 in the morning. But now they walked five blocks away. We don't know that it's any different there, Your Honor. That entire five-block area, you said the area, and it does say in the area of 44th and Holman. We just don't have that specificity. I apologize. I wish we did. It was 2 a.m. in the morning. But nevertheless, having said that, we have alleged the common carrier status of Uber. It's at Appendix 21, page C1136, paragraph 39. But again, to be perfectly candid with the court, in one of the trial court's early rulings, she rejected the common carrier status. It's not before the court that may be appealed another day, but we have alleged it. And therefore, we have also specifically alleged they owed the highest duty of care. But again, I would link the courts to the Doe v. Sanchez case, which says, four higher private carriers are subject to the same highest duty of care in transporting their passengers. And this only makes sense. They were paid, and they took the money, they accepted the responsibility to safely transport my clients from point A to B, and they didn't do it. But even under the ordinary duty of care, the law says that Uber and Mr. Casanti could not place anyone in harm's way needlessly, and they did. They had a duty to guard against an unreasonable risk of injury. And all those other facts, I think, illustrate that it's reasonably foreseeable. They placed my clients in a situation of peril where it's reasonably foreseeable they would experience peril. And that's all the law requires us to plead and ultimately prove to meet the proximate cause element of our case. And again, we can all argue about whether this area and the speeding traffic is a reasonable connection. You're repeating. I'm repeating. I apologize, Your Honor. Okay. I would just close by saying, as this court noted in its rest decision, there, even though the precise injury wasn't pled, the defendants created a formula for disaster. I think we clearly have that here. Thank you for your time and attention. Thank you. The briefs were very well written. You both argued your points entertainingly, and we appreciate that. The judge that wrote the case or is writing the case will let you know within the next couple weeks.